UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | |
|---|---|
| Joel Gage,<br><br>*Plaintiff,*<br><br>v.<br><br>APV Capital, a general partnership, LW Service, Inc., Hannah Jenkins, and John Does 1 – 20,<br><br>*Defendants.* | Case No. 1:25-cv-00551<br><br>**Complaint** |

Plaintiff Joel Gage hereby sues APV Capital, LW Service, Inc., Hannah Jenkins, and John Does 1 – 20 (collectively, the "Defendants"). In support, he alleges as follows.

**I.   Preliminary Statement**

1. Our country is in the midst of a crypto-fraud crisis. Foreign criminal organizations have stolen billions of dollars from hardworking Americans in what are known as "pig-butchering scams"—and are continuing to do so even as we speak.

2. Pig-butchering scams vary in their particulars, but in outline they are all the same. The scammers begin by initiating contact with and building trust with the victim, using diabolical psychological techniques to

- 1 -

lower their target's defenses. They then convince the victim to "invest" using a realistic-looking online cryptocurrency-trading platform. The victim deposits money and, over time, profits appear to grow. But when the victim tries to withdraw, problems emerge. The scammers demand more money in 'taxes' or 'fees' to 'unlock' the victim's account. Desperate for their money back, victims often comply. When it finally becomes clear that the whole enterprise is a sham, it is too late. The scammers disappear with victim's money, and cut off contact.

3. Tens of thousands of hardworking Americans have lost their life savings to these scams. Recent literature indicates that pig-butchering organizations have stolen more than $75 billion from victims worldwide since 2020. The FBI reports that Americans lost more than $5.8 billion to pig-butchering scams in 2024 alone.

4. This is an action by a victim of one such scam, Joel Gage. The Defendants tricked Mr. Gage into investing on a platform that turned out to be a scam, and in so doing stole $94,499.53 of his savings. Mr. Gage has now been "slaughtered," in the scammers' parlance, and his money spirited away to foreign bank accounts and crypto wallets.

5. This action and coordination with law enforcement are Mr. Gage's only hopes for recovery. In this suit, he seeks the return of the assets stolen from him and additional damages and equitable relief described below.

## II. Parties

6. Plaintiff Joel Gage is an individual. Mr. Gage is a resident of Millbrae, California.

7. APV Capital is a fraudulent cryptocurrency-investment platform operating as a general partnership. Its headquarters and situs of organization (if any), are presently unknown.

8. LW Service, Inc. is a business incorporated in the state of California.

9. Hannah Jenkins is an individual of unknown citizenship whose present whereabouts are unknown.

10. Defendants John Doe 1 – 20 are as-yet unidentified individuals, business entities, and/or unincorporated associations. These persons are APV Capital's and Jenkins's co-conspirators.

## III. Jurisdiction & Venue

11. This is an action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Accordingly, this Court has federal-question jurisdiction.

12. Each of the Defendants are subject to the personal jurisdiction of this Court because they direct business activities towards and conduct business with consumers throughout the United States, including within the State of Texas and this district through at least one fraudulent website and mobile application accessible from Texas. Alternatively, the Defendants are subject to personal jurisdiction in this district because (i) they are not subject

to jurisdiction in any state's court of general jurisdiction and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

13. Venue is proper in this district pursuant to 28 U.S.C. § 1391(c)(3), which provides that a foreign defendant may be sued in any judicial district.

### IV. Allegations

14. In May 2025, Hannah Jenkins contacted Mr. Gage via WhatsApp when he joined a group purporting to offer legitimate investment and trading advice. Jenkins messaged Mr. Gage directly and offered to teach him how to invest in and trade cryptocurrency.

15. Jenkins eventually introduced Mr. Gage to a platform called APV Capital. Jenkins told Mr. Gage that she knew how to make profits using APV Capital and offered to teach him how to do the same. Jenkins encouraged Mr. Gage to make a APV Capital account, which he soon did.

16. Over the next several months, Jenkins 'trained' Mr. Gage in cryptocurrency trading using the APV Capital platform. When Mr. Gage was ready to make a deposit on APV Capital, the platform provided him asset-transfer instructions via the platform's customer-service chat or on its "deposit" page.

17. Mr. Gage completed the transactions as instructed. Each time, the amount of the funds he 'deposited' would then be reflected in his transaction history and account balance on the APV Capital platform. Over

time, he sent assets to APV Capital with a dollar-denomiated value of $94,499.53.

18. APV Capital first directed Mr. Gage to transfer $10,000 via wire transfer to a Chase Bank account in the name of LW Service, Inc., an entity incorporated in California. This transfer was then reflected in Mr. Gage's account balance visible on the APV Capital trading platform.

19. Mr. Gage's balance on the APV Capital platform appeared to grow rapidly. But when Jenkins continually pressured Mr. Gage to add hundrends of thousands more dollars to "upgrade" his account to the next tier, and when the returns on his investments appear too good to be true, Mr. Gage began to suspect he had been scammed and sought legal help.

20. The APV Capital platform was never a "trading platform" of any sort. It was a simulacrum of a trading platform where no actual trading or investment ever occurred. The account balances, the purported profits, and the transaction history displayed were real only in the sense that they reflected the monies Mr. Gage sent to the Defendants. And this was simply to ensure that the platform appeared to be functioning. The assets Mr. Gage transferred to the Defendants were never 'deposited' on APV Capital. They were never used for cryptocurrency trading. They were simply stolen.

21. Mr. Gage was not the only victim of the APV Capital scam. At least dozens of other persons were scammed by the Defendants in a period extending over one year.

## V.  Causes of Action

22. Mr. Gage brings the following causes of action against the Defendants. The allegations set out above are incorporated into each of the causes of action that follow as if fully restated therein.

**Count One**
**Racketeering in Violation of 18 U.S.C. § 1964(c)**
**Against All Defendants**

23.     APV Capital, LW Service, Inc., Hannah Jenkins, and John Does 1 – 20 (collectively, the "Defendants") constituted an "enterprise" within the meaning of 18 U.S.C. §§ 1961(4) and 1962(c), in that they are a group of individuals and legal entities associated in fact. Their enterprise is referred to herein as the "Pig Butchering Enterprise."

24.     The Pig Butchering Enterprise engaged in numerous acts of wire fraud in violation of 18 U.S.C. § 1343, as described above. They did so using their online platform and digital communications with Mr. Gage and others. Mr. Gage relied on the Defendants' fraudulent statements to his detriment.

25.     The Defendants shared the common purpose of defrauding and stealing from Mr. Gage and other victims and thereby converting and exercising dominion over their assets.

26.     The Defendants are each a "person" within the meaning of 18 U.S.C. §§ 1961(3) & 1962(c). Each of them individually conducted, participated in, engaged in, and operated and managed the affairs of the Pig Butchering Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§ 1961(1), 1961(5) & 1962(c). Said pattern of racketeering activity consisted of, but was not limited to, the acts of wire fraud described above.

27. All the acts of racketeering activity described above were related so as to establish a pattern of racketeering activity within the meaning of 18 U.S.C. § 1962(c). The Defendants' common purpose was to defraud Mr. Gage and other victims and convert and exercise dominion and control over those victims' assets. Each Defendant, directly or indirectly, participated in all of the acts and employed the same or similar methods of commission.

28. The Pig Butchering Enterprise was of sufficient longevity for its members to carry out their purposes on a large scale. All of the acts of racketeering described above, were continuous so as to form a pattern of racketeering activity in that the Defendants have engaged in the predicate acts for a substantial period of time exceeding one year. The Pig Butchering Enterprise successfully defrauded at least dozens of persons and converted millions of dollars worth of its victims' assets, including Mr. Gage's. To the extent the Pig Butchering Enterprise's activities have ceased or cease while this litigation is pending, these acts posed threat of indefinite duration at the time they were committed and will have stopped only because they were fortuitously interrupted by events beyond the Defendants' control.

29. As a direct and proximate result of, and by reason of, the activities of the Defendants and their conduct in violation of 18 U.S.C. § 1962(c), Mr. Gage was injured in his business and property within the meaning of 18 U.S.C. § 1964(c). The Defendants stole Mr. Gage's savings and thereby caused him to suffer deprivations and extreme mental and emotional

distress. he is, therefore, entitled to recover threefold the damages sustained together with the cost of the suit, including costs, reasonable attorneys' fees and reasonable experts' fees.

### Count II
### Conversion
### Against All Defendants

30. As more fully alleged above, the Defendants misappropriated Mr. Gage's assets.

31. The Defendants converted Mr. Gage's assets to their own use or the use of others not entitled to them. They have exercised dominion and control over those assets to Mr. Gage's exclusion and detriment.

32. Mr. Gage has suffered damages as a direct and proximate result of Defendants' conversion.

### Count III
### Fraud
### Against All Defendants

33. To prevail on a fraud claim, a plaintiff must show that the defendant made (1) a false representation, (2) of a matter of material fact, (3) with knowledge of its falsity, (4) for the purpose of inducing action thereon, and (5) that the plaintiff relied upon the representation as true and acted upon it to his or her damage.

34. As alleged above, the Defendants made numerous false representations to Mr. Gage, including that theirs was a legitimate trading platform through which Mr. Gage might make a return on his assets. They

did so with knowledge of the falsity of these statements and with actual intent to induce Mr. Gage to rely on their statements to his detriment, which he did.

### VI. Jury Demand

35. Plaintiff demands a trial by jury on all claims so triable.

### VII. Relief Sought

36. Mr. Gage requests that judgment be entered against each of the Defendants on each of the causes of action set out above. he seeks relief as follows:

   a. Imposition of a constructive trust over his stolen assets and return of those assets to his possession;
   b. Monetary damages;
   c. Statutory trebled damages pursuant to 18 U.S.C. § 1964(c);
   d. Punitive damages;
   e. Costs, including reasonable attorneys' fees under 18 U.S.C. § 1964(c);
   f. Pre- and post-judgment interest;
   g. Injunctive and equitable relief insofar as required to preserve assets for recovery, halt the Defendants' unlawful acts, and otherwise enable the exercise of the Court's powers and effecutate its orders;
   h. Other relief as the Court deems just and proper.

Dated:  November 18, 2025								Respectfully submitted,

THE HODA LAW FIRM, PLLC

_____
Marshal J. Hoda, Esq.
Tx. Bar No. 2411009
3120 Southwest Fwy Ste. 101
PMB 51811
Houston, TX 77098
o. (832) 848-0036
marshal@thehodalawfirm.com

*Attorney for Plaintiff*